# EXHIBIT A

Ryan Milun (Bar No. 043412006)
Susan Ferreira (Bar No. 012602008)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010, ext. 1002
ryan.milun@milunlaw.com
susan.ferreira@milunlaw.com

*Attorneys for Plaintiff*

| | |
|---|---|
| SJM MOTORCYCLES, LLC; ASA MURRAY and SANDRA MURRAY,<br><br>*Plaintiffs,*<br><br>v.<br><br>SENTRY SELECT INSURANCE COMPANY,<br><br>*Defendant.* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MONMOUTH COUNTY CIVIL PART<br><br>Docket No.:<br><br>*Civil Action*<br><br>**COMPLAINT** |

Plaintiffs, SJM Motorcycles, LLC, Asa Murray, and Sandra Murray (collectively "SJM"), with a main business address at 136 Monmouth Road, West Long Branch, New Jersey 07764 for its complaint against defendant Sentry Select Insurance Company ("Sentry"), located at 1800 North Point Drive, Stevens Point, Wisconsin 54481, states:

## NATURE OF THIS ACTION

1. This is an action for declaratory judgment, breach of contract and breach of the covenant of good faith and fair dealing to require defendant, Sentry Select Insurance Company ("Sentry") to provide coverage and more specifically reimbursement for the defense costs incurred by plaintiffs in connection with a claim made and the defense of a class action lawsuit filed by Izabella Lizewska (on behalf of herself and those similarly situated), and Mark Jameson that was pending in the Superior Court of New Jersey, Monmouth County, Docket No. MON-L-1660-22

(the "Underlying Action").

2. After receiving a copy of the underlying complaint, SJM immediately put Sentry on notice of the lawsuit and requested a defense. In denying coverage and a defense, Sentry refused to properly consider the language of the Errors and Omissions coverage provided by the Sentry insurance policy, and in denying coverage analyzed and considered inapplicable coverage and policy provisions.

3. Despite follow up correspondence from counsel, Sentry remained steadfast in its refusal to provide coverage and accordingly, SJM is bringing this action to enforce the paid-for insurance coverage under the insurance policy sold to SJM and to hold Sentry accountable for its bad faith refusal to provide coverage and a defense thereby leaving SJM to fend for itself in the Underlying Action.

## THE PARTIES

4. Plaintiff, SJM Motorcycles, LLC, is a Pennsylvania LLC with a New Jersey business address at 136 Monmouth Road, West Long Branch, New Jersey 07764. SJM purchased a comprehensive insurance package from defendant Sentry, which included significant coverage for Errors and Omissions. The Sentry policy was in effect at the time the Underlying Action was commenced and entitled SJM to a defense of the action, and now to reimbursement for the defense costs incurred in the Underlying Action.

5. Plaintiff, Asa Murray, with a New Jersey business address at 136 Monmouth Road, West Long Branch, New Jersey 07764 is a named insured under the insurance policy sold to SJM Motorcycles, LLC. Asa Murray is entitled to coverage, including reimbursement for the defense costs incurred in the Underlying Action.

6. Plaintiff, Sandra Murray, with a New Jersey business address at 136 Monmouth

Road, West Long Branch, New Jersey 07764 is a named insured under the insurance policy sold to SJM Motorcycles, LLC. Sandra Murray is entitled to coverage, including reimbursement for the defense costs incurred in the Underlying Action.

7. Defendant, Sentry Select Insurance Company ("Sentry"), located at 1800 North Point Drive, Stevens Point, Wisconsin 54481is an insurance company that sells insurance products, including the comprehensive insurance policy sold to SJM, which is at issue in this action and under which SJM is seeking reimbursement for the defense costs incurred in the Underlying Action.

## FACTS COMMON TO ALL COUNTS

***The Sentry Insurance Policy:***

8. Sentry sold a comprehensive insurance package to SJM.

9. Sentry has been SJM's insurance carrier since August 2019 and the Sentry policies renewed each year from 2019 through at least 2024.

10. The coverage provided by the Sentry policy included Commercial Property Coverage, Commercial Inland Marine Coverage, Commercial Crime Coverage, Commercial Auto Coverage, Commercial Excess/Umbrella Coverage, and Errors and Omissions Coverage.

11. There was initial Errors and Omissions Coverage under the "Auto Dealers Coverage Form"; however, that coverage was removed from the policy by endorsement which provided that "Section III Acts, Errors Or Omissions Liability Coverages does not apply and none of the references to "Acts Errors Or Omissions" Liability Coverages or Acts, Errors Or Omissions Liability in the Coverage Form, Declarations or any endorsement attached to the Coverage Form apply.

12. In other words, Errors and Omissions liability coverage was removed completely

from the Auto Dealers Coverage Form; however, separate Errors and Omissions Coverage was added to the policy, with its own coverage provisions and policy limits.

13. The applicable Errors and Omissions Coverage provides in relevant part that:

> We will pay sums an insured legally must pay as damages arising from negligent errors or omissions which result in civil violation of: (1) any federal, state, or local Truth-In-Leasing statutes; or (2) Any federal, state, or local Truth-In-Lending statute.

14. Importantly, the policy does not provide a definition of what the federal, state or local Truth-In-Leasing or Truth-In-Lending statutes mean nor does it provide a list of which statutes are applicable.

15. The Errors and Omissions Coverage goes on to provide that:

> We have the right and duty to defense the insured against any suit seeking damages to which this coverage applies or to investigate or settle any claim or suit for these damages. However, we have no duty to investigate, defend the insured against or settle a claim or suit not covered by this insurance. Our payment of the Limit of Insurance ends our duty to investigate, defend or settle.

16. There are only three exclusions to the Errors and Omissions Coverage and the one referenced by Sentry was exclusion 2.b.(1), which provides that

> This coverage does not apply to: b. Loss, claims or suits arising from (1) dishonest, malicious, fraudulent, criminal or intentional acts or omissions; however, this exclusion does not apply to you if such act or omission was committed by your employee (other than a partner if you are a partnership, member or manager if you are a limited liability company, director or executive officer), without your direction or your knowledge.

17. "Damage" is defined as "sums the insured is legally obligated to pay as a result of negligent errors or omissions as defined in the Insuring Agreement for the applicable coverage."

18. Interestingly, the definition references certain types of damage that are not covered, including "punitive or exemplary damages, requests for restitution (including costs associated with restoring credit status), requests for injunctive or declarative relief, including associated requests

for costs or fees or any other costs, fees or penalties that are not insurable by law"

19. The reference to these types of damages in the policy (punitive and other types of damages noted above) and the definition of damage, appear to indicate that the negligent errors or omissions would include violations consumer protection statutes, such as the New Jersey Consumer Fraud Act or other applicable acts.

20. Damages does not include attorneys fees incurred by SJM, and accordingly, the amount of fees incurred is not subject to the policy limits of the errors and omissions coverage.

21. "Suit" is defined in the policy to mean "a civil proceeding in which damages are alleged."

***The Underlying Action:***

22. On or about June 17, 2022, Izabela Lizewska (on behalf of herself and those similarly situated) and Mark Jameson filed a class action complaint in the Superior Court of New Jersey, Monmouth County.

23. The complaint in the Underlying Action alleged that the business practices of SJM violated "New Jersey consumer protection laws and regulations, including the New Jersey Automotive Sales Practices regulations (N.J.A.C. 13:45A-26B.1 to B.4); the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq.); and the New Jersey Truth in Consumer Contract, Warranty and Notice Act (N.J.S.A. 56:12-14-18."

24. The complaint alleged that the violations of the various consumer protection laws occurred "in their sale of cars to New Jersey Customers.

25. Specifically, the complaint alleged that SJM was charging certain fees that violated the various Administrative Code Sections and Statutes noted above, by charging unitemized fees for, among other things, freight, prep, documentary fees, and raw materials fees.

26. The complaint goes on to note that the unitemized fees "violate the ASP regulations because the SJM defendants failed to itemize each specific service and price for each specific service that comprises the fee.

27. The complaint also alleged that the SJM Defendants have directly violated the Consumer Fraud Act and the TCCWNA.

28. Paragraphs 52 through 63 describe the unlawful charges/fees and further explain why the actions of SJM violate the various New Jersey consumer protection laws and notes that "plaintiff suffered an ascertainable loss of $2418.00, which is the amount she was charged for documentary service fees and pre-delivery fees that were prohibited and unlawful under the ASP Regulations and the Consumer Fraud Act" and that "defendants used a bill of sale that included and charged unitemized documentary service fees and/or unitemized pre-delivery service fees with numerous other New Jersey consumer.

29. With respect to the proposed class of plaintiffs, the complaint noted that there are common questions of law and fact to the members of the class, including:

a. **Whether Defendants' charging a documentary service fee and/or pre-delivery service fee, and failing to set forth in writing each specific service performed or the price for each service performed in its sales documents violates the ASP Regulations, the CFA and/or the TCCWNA;**

b. **Whether Defendants committed unconscionable and deceptive commercial practices or other affirmative acts in violation of the CFA by charging Plaintiff and those similarly situated for documentary service fees and/or pre-delivery service fees, in their sales documents without describing what those fees were for or whether they were optional;**

c. **Whether Plaintiff and those similarly situated suffered an ascertainable loss as a result of Defendants' violation(s) of the CFA and ASP Regulations;**

d. **Whether by violating the ASP Regulations on the face of the BILL OF SALE Defendants violated the TCCWNA; and**

e. **Whether Plaintiff and those similarly situated are entitled to statutory**

**damages of not less than $100 for the violations of the TCCWNA on the sales documents used in their transactions**

30. There were four counts to the complaint, including: Count One – Violation of the ASP Regulations and Consumer Fraud Act; Count Two – Violations of the Truth-In Consumer Contract, Warranty and Notice Act predicated on violations of the Consumer Fraud Act and ASP Regulations; Count Three – Declaratory Judgment to correct violations of the ASP Regulations, the Consumer Fraud Act, and the TCCWNA; and Count Four – Violations of the Automotive Repair Regulations.

31. The complaint in the Underlying Action was seeking monetary and other damages.

The Improper Denial of the Claim

32. After being served with the complaint, SJM immediately provided notice to its insurance carrier, Sentry.

33. On August 19, 2022, approximately two months after the complaint was filed, Sentry issued a denial of coverage on all coverage forms except the limited $25,000 in coverage under the Operations Defense Costs – Additional Insurance.

34. The denial of coverage on all claims forms, and more specifically under the Errors and Omissions form was improper and left SJM to fend for itself in the Underlying Lawsuit.

35. In the denial letter, Sentry analyzed several coverage forms, including the Auto Dealers Coverage Form (and the various coverages provided under that form) and then specifically noted that for the Errors and Omissions coverage, there was an endorsement removing that coverage from the Auto Dealers Coverage Form.

36. Later in the denial letter, the Errors and Omissions Coverage Form was analyzed and ultimately Sentry reached the conclusion that there was no coverage because:

The Underlying Complaint does not allege any “negligent errors or omissions” or

> errors or omissions falling within Coverage A and B of the Errors and Omissions Coverage. Further, the exclusions in the Errors and Omissions Coverage preclude insurance coverage, including but not limited to, the exclusion for "bodily injury, property damage or personal and advertising injury," dishonest, malicious, fraudulent, criminal or intentional acts or omissions" and "contractual liability. Therefore, the Errors and Omissions Coverage provides no coverage for the Underlying Action.

37. Glaringly missing from the denial of coverage is any analysis of the policy provisions or any explanation as to "why" the complaint does not allege negligent errors and omissions; particularly in light of the broad interpretation under New Jersey law of an insurance carrier's duty to defend!

38. Presumably, although it is not clear based on the complete lack of any analysis, Sentry was claiming that the Underlying Action did not allege violations of "any federal, state, or local Truth-In-Leasing statutes" or "any federal, state, or local Truth-In-Lending statute."

39. Of course, the denial does not explain or compare federal, state or local Truth-In-Lending or Truth-In-Leasing statutes nor does the denial conduct any analysis into the federal, state or local statutes.

40. Had Sentry done an analysis of the various statutes, it would have found that the State of New Jersey does not have a specific statute titled "Truth-In-Lending" or Truth-In-Leasing, but it does have various statutes and codes, including the Automotive Sales Practices Regulations, the Consumer Fraud Act and the Truth-In-Consumer Contract, Warranty and Notice Act that are established for the same purposes of the Truth-In-Lending or Truth-In-Leasing statutes, and thus, the claimed violations of these codes and statutes fall within the insuring agreement.

41. For example, the purpose/goals of the federal truth in lending statutes is to promote informed use of credit by requiring lenders to disclose clear, standardized terms and costs and to allow for transparency in the loan transactions by eliminating hidden fees and to cause lenders to

reveal the true cost of borrowing.

42. As for the Truth-In-Leasing statutes, the purpose is to assure that there is meaningful, accurate, and transparent disclosures of lease terms, including the prevention of hidden charges and unexpected financial surprises at lease signing. The Truth-In-Leasing statutes also required disclosures of upfront costs so that consumers are aware of what they are paying for and why.

43. Similarly, the statute referenced in the underling complaint all relate to appropriate disclosures of fees and other charges in connection with the sale or lease of vehicles.

44. Transparency is the critical goal of both the Truth-In-Lending and Truth-In-Leasing Statutes and given that there is a reference in the Sentry policy to federal, state, and local statutes, the various statutes referenced in the Underlying Action satisfy (or at a minimum) arguably satisfy the insuring agreement of the Sentry policy.

45. In other words, there was certainly the **potential** for coverage based on the allegations of the Underlying Action triggering the duty to defend.

46. Next, the exclusions relied upon by Sentry are in applicable – certainly at the pleading stage of the Underlying Action.

47. Sentry references the exclusion related to "dishonest, malicious, fraudulent, criminal or intentional acts or omissions" however, nothing in the Underling Action alleges any conduct that is criminal or fraudulent; indeed, none of the consumer protection statutes referenced in the Underlying Action require proof of actual fraud or intentional conduct.

48. The exclusion relied upon by Sentry in denying coverage is therefore inapplicable; particularly as it relates to the duty to defend standard, which is the only thing at issue in this action.

49. By this action, SJM is seeking full coverage and reimbursement of the defense costs incurred in connection with the Underlying Action.

**FIRST COUNT**
**DECLARATORY JUDGMENT**

50. SJM repeats the previous allegations in the complaint.

51. Sentry has failed and/or refused to provide the appropriate coverage and defense to SJM in connection with the Underlying Action, despite the fact that the allegations in the underlying complaint allege covered or potentially covered claims.

52. While SJM argues that there is no dispute the allegations in the Underlying Action trigger Sentry's duty to defend, Sentry has remained steadfast in its refusal to defend leaving SJM to fend for itself and incur significant costs in defense of the Underlying Action.

53. A controversy therefore exists between SJM, on the one hand, and Sentry, on the other hand, related to the duties and obligations in connection with the insurance coverage at issue.

54. SJM therefore seeks a declaration of the rights and interests of the parties under the Sentry policy in effect, particularly as they relate to insurance coverage and defense obligations of Sentry in connection with the claims against SJM in the Underlying Action.

**WHEREFORE**, SJM demands judgment against Sentry on this First Count of the Complaint as follows:

a) Declaring and adjudging that the claims in the Underlying Action are covered and/or are potentially covered under the Sentry insurance policy sold to SJM, thus triggering Sentry's duty to defend;
b) Declaring and adjudging that Sentry must immediately provide coverage to SJM and pay full reimbursement of the defense costs incurred in the Underlying Action;
c) Interest and costs of suit;
d) Such other relief as the Court may deem just and proper.

**SECOND COUNT**
**BREACH OF CONTRACT**

55. SJM repeats the previous allegations in the complaint.

56. Sentry failed to provide coverage and a defense of the claims made against SJM in the Underlying Action leaving SJM to fend for itself and incur all defense costs.

57. Sentry had an obligation to defend if the Underlying Action alleged covered claims or potentially covered claims. Sentry, however wrongfully denied its defense obligations.

58. The failure by Sentry to provide coverage and a defense under the insurance policy is a breach of the insurance policy as a result of which SJM has suffered damages in an amount to be proven at trial.

**WHEREFORE**, SJM demands judgment against Sentry on this Second Count of the Complaint as follows:

a) Compensatory damages;
b) Consequential and incidental damages;
c) Interest and costs of suit;
d) Counsel fees as allowed by Court Rules;
e) Such other relief as the Court may deem just and proper.

**THIRD COUNT**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

59. Sentry repeats the previous allegations in the complaint.

60. Implied in every contract, including insurance contracts, is an obligation to engage in good faith and deal fairly with the other party.

61. In addition, under settled New Jersey law, insurance carriers such as Sentry are required to act in a fiduciary capacity towards their policyholders and engage in good faith reviews of coverage decisions with an eye towards providing coverage as opposed to denying coverage.

62. In improperly denying a defense to SJM, Sentry failed to properly consider all of

the claims and damages alleged in the Underlying Action and failed to consider the duty to defend standard; indeed, the denial letter from Sentry contains absolutely no analysis of the policy and/or applicable case law.

63. Sentry further ignored the information provided by SJM and denied a defense without any valid justification.

64. As a result of Sentry's breaches of fiduciary duty and failure to act in good faith in the interpretation of the insurance policy sold to SJM, SJM has and will be damaged in an amount to be proven at trial and should further be awarded extracontractual damages as well as punitive damages to deter Sentry from engaging in such bad faith conduct.

**WHEREFORE**, SJM demands judgment against Sentry on this Third Count of the Complaint as follows:

a) Consequential and incidental damages;
b) Extracontractual and punitive damages;
c) Interest and costs of suit;
d) Counsel fees as allowed by Court Rules;
e) Such other relief as the Court may deem just and proper.

Dated: September 30, 2026

**THE MILUN LAW FIRM, LLC**
*Attorneys for Plaintiff*

By: s/ Ryan Milun
RYAN MILUN

## DESIGNATION OF TRIAL COUNSEL

SJM hereby designates Ryan Milun of The Milun Law Firm, LLC as its trial counsel in this case to the extent a trial may be necessary.

Dated: September 30, 2026

**THE MILUN LAW FIRM, LLC**
*Attorneys for Plaintiff*

By: s/ Ryan Milun
RYAN MILUN

## R. 4:5-1 CERTIFICATION

RYAN MILUN, of full age, certifies as follows:

1. I am a member of the Bar of the State of New Jersey, and I am counsel with The Milun Law Firm, LLC, the attorneys for plaintiffs in this action.

2. To the best of my knowledge, information and belief, except as indicated in this paragraph, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and no such action or arbitration proceeding is contemplated: N/A

3. Except as indicated in this paragraph, I am aware of no non-party who should be joined in this action or who is subject to joinder because of potential liability to any party on the basis of the same transactional facts: N/A.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: September 30, 2026

s/ Ryan Milun
RYAN MILUN

# Civil Case Information Statement

## Case Details: MONMOUTH | Civil Part Docket# L-003875-26

**Case Caption:** SJM MOTORCYCLES, LLC VS SENTRY SELECT INSURA NC
**Case Initiation Date:** 09/30/2026
**Attorney Name:** RYAN MILUN
**Firm Name:** THE MILUN LAW FIRM, LLC
**Address:** 20 COMMERCE DR STE 135
CRANFORD NJ 07016
**Phone:** 8627025011
**Name of Party:** PLAINTIFF : SJM Motorcycles, LLC
**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: SJM Motorcycles, LLC? NO**

**Are sexual abuse claims alleged by: Asa Murray? NO**

**Are sexual abuse claims alleged by: Sandra Murray? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/30/2026 — /s/ RYAN MILUN

Dated — Signed